J-A11004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.F., SR., | |
| Appellee | No. 1744 MDA 2016 |

Appeal from the Order Entered September 19, 2016
In the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): 2009-01382

BEFORE: SHOGAN and MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.: **FILED JULY 31, 2017**

Appellant, L.F. ("Wife"), appeals from the denial of her Petition for Enforcement of Unreimbursed Medical Expenses ("Enforcement Petition"). We affirm.

The facts and procedural history of the case are as follows: Wife and Appellee, J.F., Sr. ("Husband"), married in 1969 and separated on November 4, 2006. Complaint for Support, 5/6/09, at 1. Wife initially had filed a complaint for support on April 18, 2007, that resulted in a June 18, 2007 support order in the amount of $1,995.71 monthly for Wife and one minor child. One month later, the parties entered into a post-nuptial agreement

_____

[*] Former Justice specially assigned to the Superior Court.

("Agreement")[1] on July 19, 2007.[2] This "support case (#2007-1178) was closed by Consent Order dated July 31, 2007." Trial Court Opinion, 8/19/16, at 1.

On May 6, 2009, Wife sought enforcement of the support amount established in the Agreement and filed the instant Complaint for Support. Trial Court Opinion, 8/19/16, at 1–2. Paragraph 13 of the Agreement contained a discrepancy concerning the amount of support, in that it stated Husband was to pay "two thousand dollars" monthly, but it listed $1,600 numerically. **Id.** Pursuant to the trial court order dated November 25, 2009, made "effective June 1, 2008," the trial court resolved the discrepancy

_____

[1] Although the trial court and Wife both state that the Agreement was executed on July 9, 2007, the Agreement on its face indicates an execution date of July 19, 2007. Agreement at ¶ 1.

We note that the Agreement, presumably admitted in the former support matter that is now closed, is not included in the instant certified record. Acknowledging the general rule that we may not consider documents absent from the certified record, **In re Fiedler**, 132 A.3d 1010, 1027 n.15 (Pa. Super. 2016), we may consider a document contained in the Reproduced Record where the accuracy of the document is undisputed. **Nicolaou v. Martin**, 153 A.3d 383, 393 n.6 (Pa. Super. 2016) (*en banc*) (citing **Commonwealth v. Barnett**, 121 A.3d 534, 546 n.3 (Pa. Super. 2015), *appeal denied*, 128 A.3d 1204 (Pa. 2015), *cert. denied sub nom.*, **Barnett v. Pennsylvania**, 136 S.Ct. 2391 (2016)). Here, neither party disputes the validity of the Agreement contained in the Reproduced Record. R.R. at 7a–18a.

[2] There presently are no minor children. As of July, 2007, three of the parties' four children were emancipated; the Agreement provided child support to continue until the fourth child graduated from high school on June 1, 2008. Agreement at ¶ 13.

- 2 -

and directed Husband to pay Wife $2,000 per month in spousal support/alimony until Wife attained age sixty-five when "the Order shall be subject to modification. . . ." Order, 11/25/09. Husband also challenged the validity of the Agreement, claiming he signed it under duress. Trial Court Opinion, 11/25/09, at 6. The trial court rejected the claim and concluded that the evidence supported the parties' "mutual intention to be bound to the terms of the [Agreement]." *Id.* at 7. That proceeding was not concerned with unreimbursed medical expenses, and therefore, the 2009 order did not discuss them. Order, 11/25/09. Neither party appealed the 2009 support order.

This appeal concerns unreimbursed medical bills that Wife submitted to the Lancaster County Domestic Relations Section on January 15, 2016. Trial Court Opinion, 8/19/16, at 2. These medical bills date from 2007, 2008, 2009, 2014, and 2015. *Id.* at 4. The Domestic Relations Section declined to enforce payment of the bills because the November 25, 2009 support order did not address unreimbursed medical expenses. *Id.* at 3.

Wife subsequently filed the Enforcement Petition on February 17, 2016, and the trial court scheduled a hearing for June 16, 2016. Trial Court Opinion, 8/19/16, at 3. The certified record lacks notes of testimony from the hearing. Indeed, the trial court stated that no testimony was taken at the hearing; rather, the parties agreed to submit on the briefs. *Id.*

The trial court held that Wife failed to provide Husband with the unreimbursed medical bills from 2007 to 2014 in accordance with the Agreement. Trial Court Opinion, 8/19/16, at 4–5. Thus, it entered an order, dated August 18, 2016, scheduling a conference to address Wife's medical bills for calendar year 2015 only. *Id.* at 5. Wife filed a motion for reconsideration on August 31, 2016, which the trial court denied on September 19, 2016. Wife filed this timely appeal on October 18, 2016; both Wife and the trial court have complied with Pa.R.A.P. 1925.

Wife raises the following four issues on appeal:

I. Did the Trial Court err in finding that [Wife] failed to timely provide the medical expenses to [Husband]?

II. Did the Trial Court err in finding the parties' Postnuptial Agreement set a time limitation in which reimbursement for medical expenses must be sought?

III. Did the Trial Court err in failing to address whether the Trial Court had authority to enforce the unreimbursed medical expenses [Wife] incurred in calendar years 2007, 2008, 2009, and 2014?

IV. Did the Trial Court err in failing to address whether unreimbursed medical expenses submitted by [Wife] for calendar years 2007, 2008, 2009, and 2014 should be allocated as set forth in the parties' Postnuptial Agreement?

Wife's Brief at 5.[3]

---

[3] We have re-ordered the issues presented by Wife for purposes of clarity and ease of disposition.

We first note the standard of review applicable to post-nuptial agreements:

> [P]ost-nuptial agreements are contracts and are governed by contract law. Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's factfinding function.

*Lugg v. Lugg*, 64 A.3d 1109, 1110 n.1 (Pa. Super. 2013) (internal citations deleted).

Our standard of review regarding a support order similarly provides as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*W.A.M. v. S.P.C.*, 95 A.3d 349, 352 (Pa. Super. 2014) (quoting *Summers v. Summers*, 35 A.3d 786, 788 (Pa. Super. 2012)).

In its opinion filed August 19, 2016, the trial court noted, referring to its November 25, 2009 order confirming the amount of support owed by Husband per the Agreement, that the Agreement "remains as the controlling, legally binding contract between the parties governing all of its

subject matter." Trial Court Opinion, 8/19/16, at 2. The trial court then examined the pertinent language of the Agreement relating to medical bills, which provided: "Any unreimbursed medical expenses shall continue to be shared as set forth in the current Recommended Order dated June [1]8, 2007,[4] subject to modification as warranted by the parties' respective incomes." Agreement at ¶ 14. In turn, the trial court explained that the Recommended Order of June 18, 2007, provided the following:

> The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed medical expenses incurred for each child and/or spouse. Unreimbursed medical expenses of the obligee or children that exceed $250 annually shall be allocated between the parties. **The party seeking allocation for unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received.** The unreimbursed medical expenses are to be paid as follows: 91% by [Husband] and 9% by [Wife]."

Trial Court Opinion, 8/19/16, at 3–4 (emphasis added). Thus, relying on the language in the Recommended Order, the trial court determined that Wife failed to timely provide Husband with the bills incurred from 2007 through 2014. *Id.* at 4–5.

---

[4] The Agreement incorrectly listed the date of the Recommended Order as June 8, 2007. The Recommended Order referenced in the Agreement is dated June 18, 2007. The trial court corrected this discrepancy by stating, "There is no Recommended Order dated June 8, 2007; the apparent intent was to reference the Recommended Order dated June 18, 2007, in the parties' former support case." Trial Court Opinion, 8/19/16, at 3.

We first address Wife's argument that the trial court abused its discretion in concluding that Wife did not timely provide the medical bills to Husband. Referring to the June 16, 2016 hearing, the trial court underscored that it heard "no testimony as to what bills were received or when" and that it cannot "engage in speculation." Rule 1925(a) Opinion, 12/19/16, at 2. The trial court stated that it denied the Enforcement Petition because the medical bills were not presented to Husband in a timely fashion. *Id.* Wife now avers that she has evidence to verify that she gave Husband timely notice of the medical expenses. Wife's Brief at 18–19. Wife asks us to find the trial court's factual conclusion erroneous on the basis of this evidence.

We decline to find an abuse of discretion in the trial court's determination. The trial court represents—and the parties do not dispute—that Wife did not present any evidence of timeliness at the hearing intended for that very purpose. Rule 1925(a) Opinion, 12/19/16, at 2–3; Wife's Brief at 7. In response to Wife's attempts to present this evidence on appeal, we note that it is well-settled that our review is limited to facts contained in the certified record. Pa.R.A.P. 1921, cmt. ("An appellate court may consider only the facts which have been duly certified in the record on appeal.").[5]

_____

[5] As noted previously, the general rule restricts our review to the certified record. Pa.R.A.P. 1921, cmt. The exception allowing us to examine the Agreement permits consideration of **undisputed** evidence contained in the

*(Footnote Continued Next Page)*

This constraint "is not a mere 'technicality,'" but rather a prerequisite to meaningful appellate review. *In re J.C.*, 5 A.3d 284, 288 (Pa. Super. 2010) (quoting *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006)). Moreover, any "fail[ure] to follow proper legal procedure" is attributable to Wife, rather than the trial court. *Lugg*, 64 A.3d at 1110 n.1. Accordingly, we find no merit to Wife's claim that the trial court should have reached a different conclusion by considering evidence that she failed to present.

Wife's remaining three issues presume that Husband had timely notice of the medical bills, as required by the Agreement. Specifically, Wife maintains that neither the Agreement nor the Pennsylvania Support Guidelines requires that enforcement be sought within the period ending March 31st of each year. Wife's Brief at 12–14. Wife interprets the Agreement to control only when she must give notice, not when she must seek enforcement. *Id.* In line with her proffered interpretation, Wife argues that the trial court should have enforced the 2007, 2008, 2009, and 2014 bills and allocated them pursuant to the Agreement. *Id.* at 14–18. Because we find Wife's three issues to compel the same resolution, we address them together.

---

*(Footnote Continued)* ——————————

Reproduced Record. *Nicolaou v. Martin*, 153 A.3d at 393 n.6. The validity of the evidence submitted by Wife is disputed by the parties. Rule 1925(a) Opinion, 12/19/16, at 2; Husband's Brief at 4–5. Consequently, the exception does not apply, and we may not consider Wife's evidence.

Wife suggests that the trial court refused to enforce the medical bills because she did not seek enforcement within a time limit unilaterally imposed by the trial court. Wife's Brief at 12–14. To the contrary, the trial court's August 19, 2016, and December 19, 2016 opinions reveal that the trial court based its decision solely on the fact that Wife did not provide timely notice of the bills to Husband, as required by the Agreement. Trial Court Opinion, 8/19/16, at 4–5; Rule 1925(a) Opinion, 12/19/16, at 2. In the August 19, 2016 opinion, the trial court stated, "[Wife] failed to timely provide the bills to [Husband] for the years 2007 through 2014. It would be inequitable and contrary to the express terms of the parties' postnuptial agreement to impose the burden of these expenses upon [Husband] at this late date." Trial Court Opinion, 8/19/16, at 4–5. In its Rule 1925(a) opinion, the trial court similarly observed that it denied the Enforcement Petition "because the medical bills in question were not timely presented to Former Husband." Rule 1925(a) Opinion, 12/19/16, at 2. Therefore, Wife's contention that the trial court erred by placing a time limitation on her pursuit of enforcement is inapposite.

Furthermore, the trial court did not abuse its discretion in determining that timely notice of the medical bills to Husband was required for enforcement. Wife and Husband agreed, pursuant to the Recommended Order and the Agreement, that Wife "must provide documentation of expenses to [Husband] no later than March 31st of the year following the

calendar year in which the final medical bill to be allocated was received." Trial Court Opinion, 8/19/16, at 4; Agreement at ¶ 14. We have held that post-nuptial agreements are "evaluated under the same criteria as other contracts; absent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements." **Lugg**, 64 A.3d at 1112 (citing **Simeone v. Simeone**, 581 A.2d 162 (Pa. 1990)). The trial court was thus within its discretion when it determined, absent facts or language to the contrary, that the bills were untimely and could not be considered.

Wife additionally refers us to the Pennsylvania Support Guidelines. We conclude that the Guidelines do not afford Wife relief. Specifically, Wife points to Pa.R.C.P. 1910.16–6(c)(3), which states, "For purposes of subsequent enforcement, unreimbursed medical bills need not be submitted to the domestic relations section prior to March 31." Pa.R.C.P. 1910.16–6(c)(3). We disagree that the trial court's failure to read the Agreement in conjunction with Wife's understanding of Rule 1910.16–6(c)(3) constitutes an abuse of discretion for myriad reasons.

First, Wife's reliance on the Support Guidelines is misplaced in light of the unambiguous language of the Agreement. We have held that where "the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." **Harvey v. Harvey**, __ A.3d __, __, 2017 PA Super 207, *5 (Pa. Super. filed July 3, 2017) (quoting **Sabad v. Fessenden**, 825 A.2d 682 (Pa. Super. 2003)). As

- 10 -

noted above, the instant Agreement requires that the medical bills must be submitted to Husband in accordance with the June 18, 2007 Recommended Order, which required their submission by March 31st of the year following the calendar year in which the final bill was received. The trial court's dependence on the language of the Agreement and the Recommended Order is not in error. *Cf. In re Estate of Johnson*, 970 A.2d 433, 436–437 (Pa. Super. 2009) (holding estate obligated to continue paying child support pursuant to the unambiguous language of marital dissolution agreement, despite Pennsylvania statute terminating child support payments upon death of parent).

Additionally, even if we were to agree that the Support Guidelines control this matter, Wife's interpretation of the Guidelines is flawed. While Wife cites Pa.R.C.P. 1910.16–6(c)(3) for the proposition that no time limitation exists for her enforcement action, she disregards the context of the language she has selected. In its entirety, Rule 1910.16–6(c)(3) states as follows:

> Documentation of unreimbursed medical expenses that either party seeks to have allocated between the parties shall be provided to the other party not later than March 31 of the year following the calendar year in which the final bill was received by the party seeking allocation. For purposes of subsequent enforcement, unreimbursed medical bills need not be submitted to the domestic relations section prior to March 31. Allocation of unreimbursed medical expenses for which documentation is not timely provided to the other party shall be within the discretion of the court.

- 11 -

Pa.R.C.P. 1910.16–6(c)(3). In context, the language regarding subsequent enforcement states that timely notice must be given before the party seeking allocation is excused from pursuing enforcement within the specified period ending March 31st. Moreover, the last sentence of the statute explicitly grants discretion to the trial court to determine whether allocation of untimely medical bills is appropriate. Here, the trial court determined that allocation was not warranted. We therefore find no "clear and convincing evidence" that the trial court's holding constitutes an abuse of the discretion granted by Rule 1910.16–6(c)(3). *Lugg*, 64 A.3d at 1110 n.1.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017